NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CHARLES MEDWETZ,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

---

2024-1969

---

Petition for review of the Merit Systems Protection Board in No. PH-0752-22-0113-I-1.

---

Decided:  May 14, 2025

---

CHARLES ANTHONY MEDWETZ, Mountain Top, PA, pro se.

ELIZABETH W. FLETCHER, Office of the General Counsel, United States Merit Systems Protection Board, Washington, DC, for respondent.  Also represented by ALLISON JANE BOYLE, KATHERINE MICHELLE SMITH.

---

Before LOURIE, DYK, and CHEN, *Circuit Judges*.

Per Curiam.

Charles Medwetz petitions pro se for review of a decision of the Merit Systems Protection Board ("Board") dismissing his appeal for lack of jurisdiction. We *affirm*.

BACKGROUND

Mr. Medwetz was employed by the Department of the Army as a Supervisory IT Cybersecurity Specialist. Mr. Medwetz was interviewed by two detectives on November 15, 2021, after which he signed a sworn statement that he had misused his government travel card to fund more than $7,000 in online gambling activities.

Based on Mr. Medwetz's signed November statement, the Army formally suspended Mr. Medwetz's security clearance and placed him on paid, non-duty status pending the outcome of the Army's investigation. On December 14, 2021, the Army issued a notice of proposed removal, again relying on his November statement, charging him with conduct unbecoming a federal employee, fraud, making false statements, and failure to observe written regulations, orders, rules or procedures. On January 31, 2022, the Army informed Mr. Medwetz that, effective midnight, February 1, 2022, he would be removed from his position. He was also told by the deciding officer that "his only other alternative to the removal was to resign, which would at least keep the removal from appearing on . . . [his] . . . employment record." Pet'r's App'x 3–4 (alterations in original). The Army provided him with only a day to decide whether to resign or face involuntary removal. Mr. Medwetz resigned from his position by letter later that day, before his removal became effective. The Army memorialized Mr. Medwetz's resignation on his personnel records, explaining that he

"resigned in lieu of removal."    Pet'r's App'x 133; S. App'x 66–67.[1]

Mr. Medwetz appealed to the Board.  The Board lacks jurisdiction to hear an appeal from an employee who has voluntarily resigned from his position and can only hear claims of involuntary resignation.  *Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1328 (Fed. Cir. 2006) (en banc).  Mr. Medwetz alleged that he had been forced to resign and that his resignation was thus involuntary.  An administrative judge (AJ) of the Board ordered Mr. Medwetz "to file evidence and argument that this action is within the Board's jurisdiction."  Pet'r's App'x 26.

Mr. Medwetz, through counsel, timely filed the requested documents, arguing that he was coerced to confess to the charged misconduct by the detectives' overbearing interview tactics and that the Army relied on this coerced confession.  Mr. Medwetz alleged that his November interview with two detectives lasted six hours, during which he was allegedly forced to write a sworn statement stating that he had misused his government travel charge card to fund more than $7,000 in online gambling activities.  The detectives allegedly coerced Mr. Medwetz by accusing him of illicit drug use, threatening to conduct a polygraph test on him, and forcing him to type his sworn statement while dictating what the statement should include.

The AJ considered Mr. Medwetz's submission and concluded that Mr. Medwetz had failed to raise a nonfrivolous allegation that his resignation was involuntary and that the Board thus lacked jurisdiction over the appeal.  Mr. Medwetz sought review from the full Board, which denied the petition for review and affirmed.  S. App'x 2, 5.

---

[1]  Citations to "S. App'x" are to the supplemental appendix filed by the government.

Mr. Medwetz filed this timely petition for review. We
have jurisdiction pursuant to 5 U.S.C. § 7703(b)(1)(A).

### DISCUSSION

We must affirm the Board's decision unless it is
"(1) arbitrary, capricious, an abuse of discretion, or other-
wise not in accordance with law; (2) obtained without
procedures required by law, rule, or regulation having
been followed; or (3) unsupported by substantial evi-
dence." 5 U.S.C. § 7703(c). We review the Board's juris-
dictional determinations de novo. *Jones v. Merit Sys.
Prot. Bd.*, 98 F.4th 1376, 1380 (Fed. Cir. 2024).

"[E]mployee resignations are presumed voluntary
[and] [t]his presumption will prevail" unless the appellant
makes a nonfrivolous allegation "that the resignation was
involuntarily extracted." *Garcia*, 437 F.3d at 1329 (sec-
ond and third alterations in original) (quoting *Christie
v. United States*, 518 F.2d 584, 587 (Ct. Cl. 1975)). To
raise a nonfrivolous allegation of involuntariness based on
coercion, an appellant must allege that "(1) the agency
effectively imposed the terms of the employee's resigna-
tion[;] . . . (2) the employee had no realistic alternative but
to resign[;] . . . and (3) the employee's resignation . . . was
the result of improper acts by the agency." *Id.* at 1329
(quoting *Shoaf v. Dep't of Agr.*, 260 F.3d 1336, 1341
(Fed. Cir. 2001)). An employee merely "faced with the
unpleasant alternative of resigning or being subjected to
an adverse action" cannot nonfrivolously allege involun-
tary resignation unless the employee can show that the
"agency lacked reasonable grounds for threatening to take
the adverse action." *Terban v. Dep't of Energy*, 216 F.3d
1021, 1026 (Fed. Cir. 2000).

As a threshold matter, Mr. Medwetz argues that the
Board's order to show cause regarding jurisdiction was
improper. Pet'r's Br. 20–21. But that order was not only
proper but required by regulation, as the AJ must "inform
the parties of the proof required as to the issues of juris-

diction." 5 C.F.R. § 1201.56(d). This follows from the Board's inherent authority to "determine its jurisdiction." *Cruz v. Dep't of Navy*, 934 F.2d 1240, 1244 (Fed. Cir. 1991) (en banc). We thus disagree with Mr. Medwetz's contention that the Board "overstepped [its] authority and committed a harmful procedural error." Pet'r's Br. 20.

Mr. Medwetz appears to argue that his proposed removal was the result of improper acts by the Army (and hence, his resignation was involuntary) because the Army coerced his November statement admitting misconduct and relied on that statement in proposing removal. The Board made no determination as to whether the statement was coerced. It is established that the Fifth Amendment's protection against self-incrimination applies only when that statement is used in a criminal case. *See, e.g.*, *United States v. Verdugo–Urquidez*, 494 U.S. 259, 264 (1990); *Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (plurality). But it may nonetheless be improper for an agency to rely on some types of coerced statements in a removal proceeding, even though it appears permissible to compel testimony by threats of job loss for failure to cooperate. *See Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977). The parties have offered no relevant authority.

We need not here address whether reliance on a coerced statement would be permissible because, even if the Army had been barred from relying on his November statement, that reliance was at most harmless error since, as the Board concluded, Mr. Medwetz "ha[d] not alleged that he did not engage in the misconduct with which he was charged." *Medwetz v. Dep't of Army*, No. PH-0752-22-0113-I-1, 2024 WL 1698846, at *4 (M.S.P.B. Apr. 18, 2024). On appeal, Mr. Medwetz specifically agrees that he engaged in the challenged conduct. *See* Pet'r's Reply Br. 4 ("Yes, I did use my Government Travel Card, but it was not intentional. I made a mistake, owned it and paid the card off 1 month prior to being interviewed by law

enforcement. Did I deserve a reprimand, possible suspension or some other form of punishment, yes, I did."). Under such circumstances, reliance on the November statement is not a ground finding his resignation involuntary.

Mr. Medwetz argues that the Board in other respects improperly concluded that he failed to nonfrivolously allege that his retirement was involuntary. Pet'r's Br. 26. Other than his allegation that the Army coerced his resignation by giving him only a single day to resign, Mr. Medwetz does not direct this court's attention to any other factual allegation made before the Board establishing that his resignation was involuntary. In fact, he alleged in his jurisdictional submission that he had "select[ed] the option that would cause the least damage to his career in the future." S. App'x 71.

Lastly, Mr. Medwetz argues that the Army misled him into believing his security clearance had been suspended. Pet'r's Br. 24–25. But in his opening brief, Mr. Medwetz concedes that this "issue [was] not presented to the Merit Systems Protection Board." *Id.* at 26. Because Mr. Medwetz did not raise this argument before the Board, it is forfeited, and we do not consider it on appeal. *See Hansen v. Dep't of Homeland Sec.*, 911 F.3d 1362, 1369–70 (Fed. Cir. 2018); *Bosley v. Merit Sys. Prot. Bd.*, 162 F.3d 665, 668 (Fed. Cir. 1998).

## CONCLUSION

We have considered Mr. Medwetz's remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm* the final decision of the Board.

## AFFIRMED

### COSTS

No costs.